IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DAVID ACOFF, ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 02-PWG-0019-S |
| | ) |
| SECURITY LINK, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OF OPINION

David Acoff and J & D Convenience Store & Car Wash, Inc., plaintiffs herein, filed this action against Security Link from Ameritech, Inc., defendant herein, in state court. The action was removed to federal court because complete diversity of citizenship existed between the parties and the amount in controversy exceeded $75,000.00. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and L.R. 72.3.

In the original complaint, plaintiffs alleged causes of action for breach of contract, negligence, wantonness and fraud. (Doc. #1). Plaintiffs claim the defendants failed to properly install, maintain, operate and/or monitor the security system located on J&D's premises, and as a proximate cause, J&D's premises were destroyed. In the amended complaint plaintiffs state an additional claim for fraud based on the alleged forgery of the service contract. (Doc. #15).[1]

This matter is before the court on defendant's motions for summary judgment. (Doc. # 16 and #23). Summary judgment is appropriate only if there are no genuine issues of material fact and

---

[1] On December 21, 2004 counsel for plaintiffs filed a Motion to Withdraw (doc. #36) stating that "Plaintiff has requested that the undersigned withdraw as his attorney of record. The plaintiff will retain the services of another attorney to represent the plaintiff's interest in further proceedings." This Motion to Withdraw is DENIED. This case has been under submission for a significant period of time. If plaintiff wishes to retain new counsel for appeal purposes, he may do so; however, he should do so in sufficient time that new counsel can file a timely notice of appeal.

the movant is entitled to judgment as a matter of law.  Rule 56, *Federal Rules of Civil Procedure*.

In making that assessment, the court must view the evidence in a light most favorable to the non-

moving party and must draw all reasonable inferences against the moving party.  *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima

facie entitlement to summary judgment by showing the absence of genuine issues and that he is due

to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  Once

that initial burden has been carried, however, the non-moving party may not merely rest upon his

pleading, but must come forward with evidence supporting each essential element of his claim.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986);

*Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989).  Unless the plaintiff, who carries the ultimate

burden of proving his action, is able to show some evidence with respect to each element of his

claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a

matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530

(11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted].  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following relevant facts are undisputed or, if disputed, viewed in the light most favorable to plaintiffs, the non-moving parties.  David Acoff is the sole shareholder and president of J & D Convenience Store and Car Wash, Inc. ("J&D").  Acoff owned and operated J&D which was located at 2730 8th Avenue North, Bessemer, Alabama.  On or about November 6, 1999 J&D's premises were destroyed by fire.

Acoff purchased the premises that became J&D in 1997.  Prior to opening J & D, Acoff entered into a contract with Security Link.  Acoff signed Security Link's Alarm Services Agreement, without reading it.  There are two versions of the contract in existence.  The version Acoff acknowledges signing was produced by Acoff in discovery.  (Defendant's Exhibit 2).  The second version of the contract contained in Security Link's files bears a signature purporting to be Acoff's; however, Acoff denies signing this version of the contract.  (Defendant's Exhibit 3).  The terms and conditions of both contracts are identical.

Boxes near the top of the contract indicate the types of alarm services available to customers.  On both versions of the contract the box for burglar monitoring is checked, but the box for fire monitoring is not checked.  While Security Link initially disputed that there was any agreement to provide fire protection services, Pamdoria Houston testified that Security Link installed a security system that included smoke detectors, chimes and a panic button that was intended to alert the fire department.  (Doc. #34).  Subsequent to Acoff's submission of Houston's deposition testimony, Security Link assumed for purposes of the summary judgment motion that there was an agreement to provide fire monitoring service.

The contract contains exculpatory and limitation of liability provisions in favor of Security

Link.  On the first page of the contract, written in bold print are the following provisions:

2. **It is understood and agreed by and between the parties hereto that the Company is not an Insurer, nor is this Agreement intended to be an insurance policy or a substitute for an insurance policy. Insurance, if any, will be obtained by the Subscriber.  Charges are based only on the value of the System and/or the services provided and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises.  The amounts payable by the Subscriber are not sufficient to warrant Company assuming any risk of consequential, collateral, incidental or other damages to the Subscriber due to the System, its installation, or the use thereof, or any deficiency, defect or inadequacy of the System or services or due to the Company's negligence or failure to perform, except as specifically provided for in this Agreement.  Subscriber does not desire this agreement to provide for the liability of Company and Subscriber agrees that the Company shall not be liable for loss or damage due directly or indirectly to any occurrences or consequences therefrom which the System or service is designed to detect or avert.  From the nature of the System provided hereunder, or the services to be performed, it is impractical and extremely difficult to fix the actual damages, if any, which may proximately result from the active or passive negligence of, or a failure on the part of, Company to perform any of its obligations hereunder, or the failure to the System to properly operate.  If the Company should be found liable for loss or damage due to a failure on the part of the Company or the System or services, in any respect, such liability shall be limited solely with regard to any RECURRING SERVICE transaction, to an amount equal to fifty percent of one year's recurring service charge or the amount of $1000.00 whichever is less, or, solely with respect to a DIRECT SALE transaction, to an amount equal to**

4

> **the purchase price of the equipment with respect to which the claim is made, and regardless of the type of transaction, this liability shall be exclusive. The provisions of this paragraph shall apply in the event of loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from the performance or non-performance of the obligations set forth by the terms of this Agreement or from the active or passive negligence of the Company, its agents or employees. In the event that Subscriber desires the Company to assume greater liability under this agreement, a choice is hereby given of obtaining full or limited liability by paying an additional amount in proportion to the amount of liability the Company will assume.  If this option is chosen, an additional rider shall be attached to this Agreement setting forth the additional liability of the Company and the additional charge.**

Directly above the line where Mr. Acoff signed his name, the contract states:

> **THE TERMS AND CONDITIONS CONTAINED ON THE REVERSE SIDE OF THIS AGREEMENT ARE INCORPORATED HEREIN, AND BY REFERENCE, MADE A PART HEREOF.  SUBSCRIBER ACKNOWLEDGES RECEIVING A COPY OF THIS AGREEMENT AND HAVING READ AND UNDERSTOOD ALL OF SUCH TERMS AND CONDITIONS, INCLUDING, WITHOUT LIMITATION, SECTIONS 2, 5, 6, 7, 11 AND 13, WHICH LIMIT THE WARRANTIES, LIABILITIES AND OBLIGATIONS OF THE COMPANY.**

On or around November 6, 1999, a fire destroyed the J&D Convenience Store and Car Wash resulting in a total loss of the convenience store and car wash.  No alarm was sent to the Bessemer Fire Department and no other notification was issued to any agency by Security Link until after the fire had destroyed the building.  Plaintiffs had a policy of casualty insurance through Employer's Mutual Casualty Company ("EMC").  Plaintiffs made a claim for losses against EMC, but EMC

denied their claim.  In a lawsuit, plaintiffs prevailed against EMC and collected approximately

$150,000.00.  On November 5, 2001, the plaintiffs filed this suit against Security Link.

I.    Merger clause

      Security Link argues that it is entitled to summary judgment based on the merger clause since

the contract does not reflect that fire equipment and services were to be provided.  The merger clause

provided:

> THE TERMS AND CONDITIONS CONTAINED
> ON THE REVERSE SIDE OF THIS AGREEMENT
> ARE INCORPORATED HEREIN, AND BY
> REFERENCE, MADE A PART HEREOF.
> SUBSCRIBER ACKNOWLEDGES RECEIVING A
> COPY OF THIS AGREEMENT AND HAVING
> READ AND UNDERSTOOD ALL OF SUCH
> TERMS AND CONDITIONS, INCLUDING,
> WITHOUT LIMITATION, SECTIONS 2, 5, 6, 7, 11
> AND 13, WHICH LIMIT THE WARRANTIES,
> LIABILITIES AND OBLIGATIONS OF THE
> COMPANY.

      Although the face of the contract clearly indicates that there was no fire protection services

provided, whether this was contracted for has been called into question by the testimony of Houston

who testified that subsequent to plaintiffs entering into the contract, fire detection equipment was

installed at J & D by Security Link and she was told about a panic button that would alert the fire

department.  Based on Houston's testimony that fire detection equipment was installed by Security

Link, summary judgment cannot be granted based on the merger clause.

II.    Exculpatory clause

Security Link further argues that it is entitled to summary judgment based on the exculpatory clause.  The exculpatory clause provided:

> The amounts payable by the Subscriber are not sufficient to warrant Company assuming any risk of consequential, collateral, incidental or other damages to the Subscriber due to the System, its installation, or the use thereof, or any deficiency, defect or inadequacy of the System or services or due to the Company's negligence or failure to perform, except as specifically provided for in this Agreement. Subscriber does not desire this agreement to provide for the liability of Company and Subscriber agrees that the Company shall not be liable for loss or damage due directly or indirectly to any occurrences or consequences therefrom which the System or service is designed to detect or avert.

Plaintiffs mistakenly rely on *Alabama Great Southern Railroad Company v. Sumter Plywood Corporation*, 359 So.2d 1140 (Ala. 1978) for the proposition that "as between the contracting parties, the provisions of a contract which would exempt one of the parties from the consequences of its own negligence is void against public policy."   In *Industrial Tile, Inc. v. Stewart*, 388 So.2d 171, 176 (Ala. 1980), *cert. denied,* 449 U.S. 1081 (1981),  the Alabama Supreme Court modified *Alabama Great Southern Railroad Co.*, holding:

> if the parties knowingly, evenhandedly, and for valid consideration, intelligently enter into an agreement whereby one party agrees to indemnify the other, including indemnity against the indemnitee's own wrongs, if expressed in clear and unequivocal language, then such agreements will be upheld.

Plaintiffs argue that exculpatory clauses are unenforceable due to public policy concerns. In *Morgan v. South Central Bell Tel. Co.*, 466 So.2d 107, 117 (Ala. 1985), the Alabama Supreme Court quoted with approval *Tunkl v. Regents of the University of California*, 60 Cal.2d 92, 32 Cal.

7

Rptr. 33, 383 P.2d 441 (1963), a California case, that set forth the criteria to determine an exculpatory clause is invalid as contrary to public policy:

> Six criteria were established to identify the kind of agreement in which an exculpatory clause is invalid as contrary to public policy.
>
>> "... [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some member of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract or exculpation, and makes no provision whereby a purchaser may pay additional fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents." (60 Cal.2d at 98-101, 32 Cal.Rptr. at 37-38, 383 P.2d at 445-446.) (Footnotes omitted).

See also, *Borders v. Alabama Power Company*, 547 So.2d 446 (Ala. 1989).

The transaction in this case does not meet the criteria set out in *Tunkl* and adopted by the Alabama Supreme Court. The sale of alarm systems and services is not the type of business subject to public regulation. While a security alarm service may be a service of great importance to the public and defendant presumably holds itself out as willing to perform this service for any member of the public who seeks it, defendant is hardly, however, the only game in town and therefore does not have a decisive advantage of bargaining strength. Further, the contract, while containing standardized language also gave plaintiffs the option of paying an additional amount in return for

which defendant would assume greater liability.  The public policy concerns that might invalidate

an exculpatory clause are simply not present in this case.

Security Link is entitled to summary judgment based on the exculpatory clause.

III.    <u>Limitation of liability clause</u>

Security Link further argues that it is entitled to summary judgment based on the limitation

of liability clause.  The limitation of liability clause provided:

> If the Company should be found liable for loss or
> damage due to a failure on the part of the Company or
> the System or services, in any respect, such liability
> shall be limited solely with regard to any
> RECURRING SERVICE transaction, to an amount
> equal to fifty percent of one year's recurring service
> charge or the amount of $1000.00 whichever is less,
> or, solely with respect to a DIRECT SALE
> transaction, to an amount equal to the purchase price
> of the equipment with respect to which the claim is
> made, and regardless of the type of transaction, this
> liability shall be exclusive.

Since this case was taken under submission, the Alabama Supreme Court has upheld a limitation of

liability provision involving alarm equipment and monitoring services.  *Saia Food Distributors, Inc.*

*v. Security Link from Ameritech, Inc.*, ___ So.2d ___ (Ala., Dec. 3, 2004).  Even prior to the

Alabama Supreme Court's recent pronouncement, limitation of liability clauses in security alarm

contracts were generally held to be valid.  See *D.L. Lee & Sons, Inc. v. ADT Security Systems,*

*MidSouth, Inc.*, 916 F. Supp. 1571 (S.D. Ga. 1995), *aff'd*, 77 F.3d 498 (11th Cir. 1996).  The court

in *D.L. Lee & Sons* also upheld the liability limitation clause in that case involving a fire alarm

relying in part on  *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44(2d Cir. 1993) , wherein the

court held:

> [T]he rationale for permitting the provider of a burglar
> alarm system to limit its liability is equally applicable
> to the provider of a fire alarm system.  The supplier of
> either type of system is paid for its equipment and
> services, and the price does not generally include a
> sum designed to anticipate the possible need to pay
> the purchaser the value of the property that the system
> is to protect.  The owner or custodian of the property
> is in a far better position than the alarm system seller
> to know the property's value and to bargain with an
> insurance company for appropriate coverage and an
> appropriate premium, and ... the alarm seller's
> "limitations on liability help keep alarm services
> affordable."

990 F.2d 44, quoting *Sommer v. Federal Signal Corp.* 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 962,

593 N.E.2d 1365, 1370 (1992).

In *American District Telegraph Co. of Alabama*, 219 Ala. 595, 122 So. 837 (Ala. 1929), on

rehearing, the Alabama Supreme Court upheld a limitation of liability clause in a case involving a

sprinkler system.  Initially, the court had considered the defendant to be "at least a quasi public

service utility" and had held that the defendant could not "stipulate for protection against negligence

in the performance of the duties he does assume;"  however, on rehearing,  the court  held:

> The defendant is not subject to the control of the
> Public Service Commission, and has the right to
> contract with whom it pleases, and is not legally
> bound to serve the public.  ... This being the case, the
> contract in question falls within the influence of our
> case of *McKinney v. Mobile & O.R. Co.*, 215 Ala.
> 101, 109 So. 752, 48 A.L.R. 998, and the limitation
> therein is not void because contrary to public policy,
> and a breach of same, whether negligently done or
> not, involves no breach or violation of a public duty,

and this is so whether the complaint be on contract or
in tort.

122 So. at 841.

IV.    Allegations of wantonness and fraud

Plaintiffs would have the court deny summary judgment on the basis of either the exculpatory

clause or the limitation of liability clause based on the complaint which included counts for

wantonness and fraud.  In the count for wantonness, plaintiffs alleged:

>    11.    Plaintiff[s] aver that Defendant failed to properly install,
>    maintain, operate and/or monitor the security system located
>    at 2730 8th Avenue North, Bessemer, Alabama which said
>    property was owned and operated by Plaintiffs.  Plaintiff[s]
>    aver that on or about November 6, 1999 a fire occurred at and
>    upon said premises and that due to Defendants wanton
>    conduct Defendants failed to notify Plaintiffs, the local Fire
>    Department, the local Police Department and any other
>    Emergency agency or government organization to respond to
>    said emergency.  Plaintiffs aver that as a result of Defendants
>    wanton conduct, Plaintiffs building and contents were totally
>    destroyed.

The allegations in the count for negligence were strikingly similar:

>    8.    Plaintiffs aver that Defendant[] failed to properly install,
>    maintain, operate and/or monitor the security system located
>    at 2730 8th Avenue North, Bessemer, Alabama which said
>    property was owned and operated by Plaintiffs.  Plaintiffs
>    aver that on or about November 6, 1999 a fire occurred at and
>    upon said premises and that Defendant[] negligently failed to
>    notify Plaintiffs, the Fire Department, the Police Department
>    and/or other Emergency agency or government organization
>    to respond to said emergency.  Plaintiffs aver that as a result
>    of Defendant['s] negligent conduct, Plaintiffs['s] building and
>    contents were totally destroyed.

Negligence and wantonness are two distinct causes of action. *Ex parte Jackson*, 737 So.2d 452 (Ala. 1999). In *Alfa Mut. Ins. Co. v. Roush*, 723 So.2d 1250, 1256 (Ala. 1998), the Alabama Supreme Court stated:

> "Wantonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." "Wantonness" has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.

Despite having had an opportunity to engage in discovery, plaintiffs have never described conduct which would amount to wantonness on the part of Security Link.

In the count for breach of contract, plaintiffs alleged:

> 5. Plaintiffs aver that Plaintiffs paid to Defendant monies to install said security system and to monitor said security system on a monthly basis. Plaintiffs aver that Defendant[] failed or refused to provide the services as represented to your Plaintiffs by Defendant and that Defendant[] breached said contract/agreement.
>
> 6. Plaintiffs aver that Defendant[s] failed to adequately install, maintain and/or monitor the security system located within the premises at 2730 8th Avenue North, Bessemer, Alabama. As a proximate consequence of Defendant['s] failure or breach of agreement, Plaintiffs suffered a total loss of their property by fire; Plaintiffs['] contents, equipment, goods and merchandise were totally destroyed; Plaintiffs were caused to suffer loss of income; and Plaintiffs were caused to suffer mental anguish and emotional distress.

In the count for fraud, plaintiffs alleged:

> 14. Plaintiffs aver that on or about November 9, 1997, Defendant[] by and through their employees, agents or authorized representatives solicited and sold to Plaintiffs a security system which was represented to provide Plaintiffs

with burglary and physical security notification, forced entry, fire and smoke detection.  Plaintiffs aver that Defendant[] represented that said security system would be monitored twenty-four (24) hours each day, seven (7) days a week by Defendant[].  Defendant[] represented that in event of an emergency, Defendant[] would notify Plaintiffs, the Fire Department, the Police Department and/or any other Emergency personnel necessary to respond to the appropriate security problem.  Plaintiffs aver that in reliance upon said representations made by Defendant[], Plaintiffs purchased said security system and monthly monitoring system.

15.     Plaintiffs aver that Defendant['s] representations were false or were made with such reckless indifference to the truth that Plaintiffs should rely upon them.  Plaintiffs aver that Plaintiffs did rely upon said representations made by Defendant[] to Plaintiffs['] detriment.  As a result of false and fraudulent representations or reckless misrepresentations by Defendant[], Plaintiffs purchased a security system with monthly monitoring system from Defendant[].

16.     Plaintiffs aver that on or about November 6, 1999, the premises located at 2730 8th Avenue North, Bessemer, Alabama were totally destroyed by fire loss.  Plaintiffs aver that Defendant['s] security system and/or monitoring system failed to provide the notification as represented by Defendant[] and as a result of said failure, Plaintiffs['] building and contents were totally destroyed.

17.     Plaintiffs aver that as a proximate result and consequence of Defendant[] false, fraudulent representation and/or reckless misrepresentations, Plaintiffs were caused to suffer the following damages: a total loss of their property by fire; Plaintiffs['] contents, equipment, goods and merchandise were totally destroyed; Plaintiffs were caused to suffer loss of income; and Plaintiffs were caused to suffer mental anguish and emotional distress.

The elements of fraud are (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) proximately resulting in damage to plaintiff.  *P & S Business, Inc. v. South Central Bell Telephone Company*, 466 So.2d 928, 930 (Ala. 1985).  If, as here, the fraud is based

13

upon a promise to perform an act in the future, two additional elements must be proven: (1) the defendant's intention at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive. *Id*. *Saia Food*, *supra* at 22-23. "Failure to perform a promised act is not in itself evidence of intent to deceive at the time the promise was made. ... If it were, the mere breach of a contract would be tantamount to fraud." *Id*. Further, "[n]egligently failing to perform services does not rise to the level of promissory fraud." *Saia Food*, *supra* at 23.

Based on the allegations in the complaint, which have not been supplemented by plaintiffs with any evidence at the summary judgment stage, there is nothing to support plaintiffs' conclusory allegations of wantonness or fraud based upon Security Link's promise to provide fire alarm services.

Plaintiffs added a second fraud count by amended complaint (doc. #15) alleging:

> 19.   Plaintiffs aver that the Defendant, through it's [sic] authorized representatives changed, altered and/or forged documents which were purported to be a part of the agreement between Plaintiff[s] and Defendant for Security services for installation and monitoring security devices for Police, Fire, Medical Emergency and other security monitoring services which were represented by Defendant[] to be provided to Plaintiffs on a twenty four (24) hour basis, seven (7) days a week basis.

> 20.   Plaintiffs aver that the representations made by Defendant were false and were made with the intention that Plaintiff[s] should rely upon them.  Plaintiff[s] aver that Defendant changed, altered and/or forged documents without Plaintiffs['] knowledge or permission and with the purpose of altering and/or changing the agreement between the parties. Plaintiff[s] aver[] that Defendant[] failed to provide the services promised to Plaintiffs and as a result of said failure, Plaintiffs have been caused to suffer loss of property, loss of profits, mental anguish and emotional distress.

Plaintiffs contend that the contract filed by defendant as exhibit 3 to the motion for summary judgment was a forgery.  Acoff admits that he signed the contract filed as exhibit 2.  Both contracts contained the same terms, including the same exculpatory clauses and limitation of liability clauses.  As previously stated, in order to establish fraud, a plaintiff must prove four elements:  (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) proximately resulting in damage to plaintiff.  *P & S Business, Inc.*, 466 So.2d at  930.

Even assuming that elements 1 and 2 are satisfied, plaintiffs have not satisfied elements 3 and 4.  Because plaintiffs were was not even aware of the contract with the alleged forged signature until Acoff's deposition, they cannot have relied upon it.  Further, because the provisions in both versions of the contract (Defendant's Exhibits 2 and 3) are the same, plaintiffs cannot show that they were damaged by the creation of Defendant's Exhibit 3, the contract with the alleged forged signature.

Based on the foregoing, defendant's motion for summary judgment is due to be granted. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 23rd day of December, 2004.

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE